# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

KATHLEEN MARY MILLS,

        Plaintiff,

        v.

SECRETARY OF THE ARMY,

        Defendant.

Case No. 2:18-cv-32
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Secretary of the Army's (the "Secretary") *Motion for Summary Judgment* (ECF No. 11), Plaintiff Kathleen Mary Mills' ("Mrs. Mills") *Cross-Motion for Summary Judgment* (ECF No. 17), and the Secretary's *Reply* (ECF No. 18). For the reasons below, the Court **DENIES** Mrs. Mills' *Cross-Motion for Summary Judgment* (ECF No. 17) and **GRANTS** the Secretary's *Motion for Summary Judgment*. (ECF No. 11).

## I.

### A. Background

Mrs. Mills is the widow of late Chief Warrant Officer Herbert Mills ("Officer Mills"). Mrs. Mills filed this suit against the Secretary seeking reconsideration of the Army Board of Correction of Military Records' decision, which denied her requests to correct Officer Mills' DD Form 93. That form designated beneficiaries to his death gratuity.

### B. Undisputed Facts

On February 5, 2005, Officer Mills filed a DD Form 93, designating beneficiaries to receive death gratuity benefits in the event of his death while on active duty. AR 11. Officer

Mills listed his wife, Mrs. Mills, as the sole beneficiary and set her allowance at 100 percent. Pl.'s Memo. in Opp. to Def.'s Mot. for S.J., Ex. 17. Officer Mills listed his grandson as the sole beneficiary of his death gratuity, if no spouse or child survived him. *Id.*

In August 2005, Officer Mills filed for divorce in Ashtabula County, Ohio, and separated from Mrs. Mills. AR 5, 37–38. At Officer Mills' request, an attorney drafted a customized Court Restraining Order of Financial Assets, prohibiting Officer Mills and Mrs. Mills from:

> selling, transferring, giving away, consuming, concealing, removing, disposing of, assigning, mortgaging, encumbering, or in any other manner alienation or disposing of the joint or separate properties of the parties, whether personal or real, tangible or intangible, and either directly or indirectly, whether titled in their separate names or jointly with each other ....

AR 5, 34–36, 39–41; Pl.'s Memo. in Opp. to Def.'s Mot. for S.J., Ex. 12. Thereafter the divorce proceedings remained pending. AR 42–43.

On March 7, 2009, Officer Mills filed an updated DD Form 93 in which he designated his death gratuity benefits in the following allotments: 25% to his mother, 25% to his brother, 25% to his sister, and 12.5% each to two private organizations. AR 6, 29. Mrs. Mills was not named. AR 29. The Secretary never notified Mrs. Mills of Officer Mills' updated DD Form 93. *Id.*

While conducting an airborne operation on October 24, 2010, Officer Mills died due to a military training accident. AR 6, 32–33. At the time of his death, the court had not finalized the divorce filing between Officer Mills and Mrs. Mills. AR 42–43. Thereafter the court dismissed the divorce filing due to Officer Mills' death. *Id.*

Upon learning she was not a beneficiary to Officer Mills' death gratuity, Mrs. Mills contacted the Deputy Chief of Casualty and Mortuary Affairs (the "Deputy Chief") of U.S. Army Human Resources Command. AR 6, 83. After reviewing Officer Mills' DD Form 93, the Deputy Chief concluded that Officer Mills' two designations to private organizations, which

totaled $25,000, violated 10 U.S.C. § 1477 because those private organizations are not living "persons" under the statute. AR 6, 83. Due to the two unlawful designations, the Deputy Chief disbursed the $25,000 to Mrs. Mills, as Officer Mills' surviving spouse. AR 6, 83, 108. The Deputy Chief also informed Mrs. Mills that the Defense Finance and Accounting Service (the "DFAS") had disbursed $25,000 to each of Officer Mills' other beneficiaries.

In response, Mrs. Mills filed a congressional inquiry which contested the payments to Officer Mills' named beneficiaries. AR 6. Mrs. Mills pointed out that Officer Mills improperly designated his family in percentage increments of five, rather than the required ten. AR 6, 83. For that reason, Mrs. Mills argued, the DFAS erred by disbursing the remaining $75,000 to Officer Mills' family members in accordance with his flawed DD Form 93. Mrs. Mills concluded that she was entitled to the full benefit. AR 6.

Upon reviewing her inquiry, the DFAS paid Mrs. Mills an additional $15,000 to account for the erroneous $5,000 surplus payments to each family member which exceeded the statutory increment. AR 7, 17–18, 83. According to the DFAS, despite this additional payment, Mrs. Mills was not entitled to the family members' full $75,000 because only portions of those designations were improper. The DFAS concluded that the $15,000 it paid to Mrs. Mills corrected the erroneous allotments and that neither the statute nor the Department of Defense (the "DoD") Financial Management Regulation ("FMR") invalidated all the members' elections. AR 9, 83, 108. On that basis, DFAS paid Mrs. Mills the additional $15,000 and closed her case. AR 13, 108.

In September 2013, Mrs. Mills applied for relief from the Army Board for Correction of Military Records ("ABCMR"), asserting that she should have received the full death gratuity as the surviving spouse due to Officer Mills' erroneous designations and because the Secretary

3

never notified her that Officer Mills updated his DD Form 93. AR 84–86. The ABCMR denied

Mrs. Mills relief, concluding that she did "not demonstrate the existence of a probable error or

injustice." AR 56. Specifically, the ABCMR found that "the law does not state that failure to

notify the spouse invalidates any other valid election," and that there was insufficient evidence to

grant her relief since "[t]he Solider is not obligated to name a spouse" and "[t]he Army is not

obligated to change the election even if the spouse was notified and disagreed." AR 56.

For those reasons, the ABCMR concluded that Mrs. Mills was "only entitled to the

portion of the death gratuity not appropriately designated." AR 56. The ABCMR determined

that:

> The FSM designated 25% of the death gratuity to two organizations. By law,
> organizations may not be paid the death gratuity. The applicant is only entitled to
> the portion of the death gratuity not appropriately designated. She was entitled to
> the 25% (25,000.00) that was designated to the two organizations.
>
> The OGC ruled the FSM did not specify the death gratuity amounts in 10%
> increments as required by the FMR and therefore the applicant was awarded an
> additional 15% (15,000.00). The applicant was paid a total of $40,000.00.

AR 56.

After the ABCMR's finding, Mrs. Mills requested reconsideration. AR 21–27. Again,

Mrs. Mills argued that the law required her to receive the full $100,000 gratuity for the same

reasons that she had raised in her initial application. AR 23–25. Mrs. Mills also posited that the

2009 DD Form 93 violated the restraining order related to the divorce proceedings since she had

a vested property interest in Officer Mills' death gratuity due to her status as a statutory

beneficiary in February 2005. AR 26, 30.

In September 2017, the ABCMR reviewed Mrs. Mills's request for reconsideration and

denied her relief. AR 18. The ABCMR quoted and then addressed the four issues Mrs. Mills

raised for reconsideration as follows:

4

a. "The language in the law is clear and favors awarding the applicant the full death gratuity." This is not an accurate statement. According to the 2008 Federal law, she is only entitled to the portion of the death gratuity not appropriately designated, as the FSM surviving spouse. As the FSM erroneously designated a portion of his death gratuity to two private organizations, the applicant is entitled to that portion designated to the two private organizations. Following her congressional inquiry, she received an additional $15,000. According to Federal law, the death gratuity is a tax-free benefit—not insurance—issued in increments of 10 percent ($10,000) to assist individuals in meeting their expenses prior to distribution of survivor benefits (insurance). When made aware of their error in distributions, DFAS rectified the situation by sending an additional 15 percent ($15,000) to her. In effect, DFAS reduced the three other beneficiaries' death gratuity to comply with the law.

b. "The Army violated her procedural due process in that the Board failed to use consistent review process when awarding the applicant the additional $12,500 given to each organization." This is not an accurate statement. The Board did not grant the applicant additional monies. It was the OGC, the legal arm of DFAS, which ruled the FSM did not specify the death gratuity in amounts in 10 percent increments as required by the FMR. The distribution of 25 percent to the three other beneficiaries was not in increments of 10 percent. In effect, a percentage of 5 percent was taken from each of the three beneficiaries and reallocated to the applicant. This redistribution of the death gratuity by DFAS was done to comply with the intent of the law as well as the FSM intentions to leave a partial death gratuity to his family members as he was authorized to do by the 2008 law.

c. "The Army failed to give the applicant notice that the FSM changed the beneficiary." This is an accurate statement. While it is true that the applicant was not notified by the OHARNG that the FSM had changed his beneficiary, the law only requires notification. However, the law does not state that failure to notify the spouse invalidates any other valid election. The March 2009 election was and remains a valid election and is in compliance with the 2008 law, the designation of a beneficiary for the death gratuity was done by rigid hierarchal rules.

d. "The most recent DD Form 93 is invalid." This is an inaccurate statement. The law changed in 2008 allowing Service members the ability to designate individuals of their choosing on their DD Form, 93. The fact that the FSM did not designate the FSM's spouse (applicant) as the sole beneficiary does not invalidate it. The death gratuity is not survivor benefits. The intent of the death gratuity is to assist the deceased Service members' designated individuals with costs directly associated with burial such as their travel, housing and food costs. The March 2009 DD Form 93 removed the applicant as a beneficiary because it appears the FSM did not desire her to be the beneficiary of his death gratuity. The 2008 law gave each service member the prerogative to name their own beneficiaries. Failure to notify a spouse that a service member changed their beneficiary designation after 1 July 2008 does not invalidate the DD Form 93. Soldiers are

not obligated by statute or regulation to name a spouse as a beneficiary. The Army is not obligated to invalidate an election even if the spouse had been administratively notified and disagreed.

AR 18–19.

Mrs. Mills then filed this action under the Administrative Procedure Act ("APA"), challenging the ABCMR's decision. Pl.'s Compl. at 7–9 (ECF No. 1).

## II.

Both parties agree, and are correct, that the ABCMR's decision is a final agency action subject to review under the APA, 5 U.S.C. § 701 *et seq.*, which confines this Court's review to the administrative record. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971) (overruled on other grounds by *Califano v. Sanders*, 430 U.S. 99, 105 (1977)). "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Little Traverse Lake Property Owners Assoc. v. National Park Service*, 883 F.3d 644, 657 (6th Cir. 2018) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)). Because the ABCMR's decision is an informal agency adjudication, the APA's "arbitrary and capricious" standard applies. 5 U.S.C. § 706(2)(A).

The arbitrary and capricious standard requires the district court to review "whether the decision was based on consideration of the relevant factors and whether there has been a clear error of judgment." *Snyder Computer Sys., Inc. v. U.S. Dept. of Transp.*, 13 F. Supp. 3d 848, 860 (S.D. Ohio 2014) (quoting *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 416 (1971)). "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.* Instead, the court must determine that "the agency [articulated] a rational

connection between the facts found and the choice made, and [provided] something in the way of documentary support for its action." *GTE Midwest, Inc. v. F.C.C.*, 233 F.3d 341, 344–45 (6th Cir. 2000) (internal citations and quotation marks omitted). When reviewing military correction board decisions, courts use "an 'unusually deferential application of the arbitrary and capricious standard' of the APA." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)).

### III.

Prior to amendment in 2007, Title 10 of the United States Code designated service members' beneficiaries under a rigid survivorship scheme. Under the current statute, however, service members designate their own beneficiaries of a $100,000 death gratuity, which helps defray the costs incurred after a service member's death. 10 U.S.C. §§ 1475–1478. Title 10 states:

> (a) **Designation of recipients.**—(1) On and after July 1, 2008, ... a [service member] may designate one or more persons to receive all or a portion of the amount payable under [10 U.S.C. § 1478]. The designation of a person to receive a portion of the amount shall indicate the percentage of the amount, to be specified only in 10 percent increments, that the designated person may receive. The balance of the amount of the death gratuity, if any, shall be paid in accordance with subsection (b).
> (2) If a [covered service member] has a spouse, but designates a person other than the spouse to receive all or a portion of the amount payable ... the Secretary concerned shall provide notice of the designation to the spouse.
> ....
> (b) **Distribution of remainder; distribution in absence of designated recipient.**—If a [covered service member] does not make a designation under subsection (a) or designates only a portion of the amount payable under [10 U.S.C. § 1478], the amount of the death gratuity not covered by designation shall be paid as follows—(1) To the surviving spouse of the person, if any.

10 U.S.C. § 1477(a)–(b).

There is no dispute that Officer Mills was a service member covered by section 1477.

The parties also agree that Officer Mills violated the statute by designating only a portion of the

7

amount payable. Further, the parties agree that the Secretary violated the statute by failing to notify Mrs. Mills when Officer Mills designated other family members as beneficiaries. Finally, there is no dispute that section 1477 is silent about the consequences of a violation.[1]

This case presents two issues. First, whether the ABCMR abused its discretion by concluding that a service member's benefit designation is not entirely invalidated when a service member fails to designate his beneficiary portions in 10% increments. Second, whether the ABCMR abused its discretion by concluding that a service member's designation is not entirely invalidated when the Secretary fails to notify a surviving spouse that the service member designated someone other than the surviving spouse. For the reasons below, the Court concludes that the ABCMR did not abuse its discretion in either instance.

## A. The ABCMR's Conclusion that Non-Conforming Portions of Designations Do Not Invalidate the Entire Designation was Not Arbitrary or Capricious.

As the Supreme Court has stated, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). Section 1477 is silent about the consequences of violations to the statute, and therefore, the ABCMR was tasked with constructing a reasonable interpretation of section 1477.

In Mrs. Mills' view, "[t]he Secretary['s] decision was arbitrary, capricious, and contrary to law because there was a clear error and injustice that was only partially remedied when DFAS mailed Mrs. Mills its self-described 'appropriate remedy.'" *Id.* In response, the Secretary argues the ABCMR was correct in reducing the designations only by the erroneous amounts

---

[1] "While the statute does not state that erroneous designations are void in their entirety, the Board's conclusion that there was no error and no injustice left Mrs. Mills in an undue hardship." Pl.'s Memo. in Opp. at 7.

because those corrective measures "compl[ied] with the intent of the law and as well as [Officer Mills'] intentions to leave a partial death gratuity to his family members ...." Def.'s Mot. for Summ. J. at 13 (quoting AR 18). In the Secretary's view, this determination complied with the statute or, at a minimum, was the agency's interpretation of an ambiguous statute that is entitled to deference." *Id.* The Court agrees.

With the 2008 amendments to section 1477, Congress intended to allow a service member to determine—with flexibility—who would ultimately receive his death gratuity. Further, Congress limited the amount of flexibility to ten-percent increments. Although Congress did not provide consequences for service members who exceeded the statute's limited flexibility, the ABCMR reasonably allowed the Secretary to reduce the infringing designations to comply with Congress's explicitly flexible standards. By doing so, the ABCMR sensibly interpreted section 1477's ambiguous portions in a manner consistent with its unambiguous portions. On that basis, the ABCMR was not arbitrary or capricious by refusing to entirely invalidate Officer Mills' designations due to minor departures from section 1477.

**B. The ABCMR's Conclusion that the Secretary's Failure to Notify Mrs. Mills Did Not Invalidate the Entire Designation Was Neither Arbitrary Nor Capricious.**

Mrs. Mills argues that the ABCMR unreasonably erred by finding that Officer Mills' 2009 DD Form 93 was valid despite the Secretary's failure to notify Mrs. Mills that Officer Mills designated individuals other than her. On this issue, the ABCMR concluded that:

> While it is true that the applicant was not notified by the [Secretary] that [Officer Mills] had changed his beneficiary, the law only requires notification. However, the law does not state that failure to notify the spouse invalidates any other valid election.

AR 18. Mrs. Mills concedes that section 1477(a) does "not provide any repercussions for failure of the Secretary of the Military Department to notify the spouse." Pl.'s Memo.

in Opp. at 8. Mrs. Mills contends, however, that the lack of notice precluded her from raising a claim for acquiring spousal support arrears and tax debts incurred by Officer Mills. In response, the Secretary points out that even if the Secretary had notified Mrs. Mills that Officer Mills removed her as a beneficiary, Mrs. Mills would have no basis to challenge his election. For that reason, the Secretary argues, "Mrs. Mills has provided no persuasive reason why the Board should apply a remedy after Officer Mills' death that would have been unavailable to Mrs. Mills while Officer Mills was alive." Def.'s Mot. for Summ. J. at 18. Additionally, the Secretary argues that the ABCMR's interpretation is reasonable given that Congress required the Secretary—not the service member—to notify the spouse about the service member's beneficiary change. With that in mind, the Secretary contends, it would be unjust to invalidate a service member's statutory right to name beneficiaries due to an omission about which he had no control or obligation to act.

The Court agrees. Section 1477(b) requires the Secretary to notify a spouse if the service member designates any portion to someone other than the spouse but does not provide any repercussions for failing to do so. The ABCMR was reasonable to conclude that the statute did not provide a non-notified surviving spouse the right to completely invalidate the service member's designations. [2]   In fact, section 1477(b) does not provide a surviving spouse— whether notified by the Secretary or not—the ability to protest a service member's designation. Therefore, the ABCMR was reasonable to conclude that the Secretary's failure to notify Mrs. Mills did not invalidate Officer Mills' DD Form 93.

---

[2] While the Secretary's interpretation was reasonable, the statute itself creates a harsh, probably unintended, result. As illustrated by this case, the lack of consequence for the Secretary's failure to notify a surviving spouse of her removal as a beneficiary creates serious consequences, especially where a restraining order of financial assets exists and potentially limits the servicemember's ability to modify his DD Form 93. Further, this problem is not difficult to fix by appropriate legislation.

## IV.

In conclusion, the Court **DENIES** Mrs. Mills' *Cross-Motion for Summary Judgment* (ECF No. 17) and **GRANTS** the Secretary's *Motion for Summary Judgment* (ECF No. 11), thereby **AFFIRMING** the Decision of the Army Board for Correction of Military Records. The Court **DIRECTS** the Clerk to enter judgment accordingly.

**IT IS SO ORDERED.**

_3-5-2019_
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**